Electronically Filed - St Louis County - October 07, 2021 - 02:24 PM

CIRCUIT COURT
ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| NAIMATULLAH NYAZEE, on behalf of himself and all others similarly situated,<br><br>                       Plaintiffs,<br><br>     vs.<br><br>T-Mobile USA, Inc.,<br><br>  Serve:  CSC-Lawyers Incorporating<br>               Service Company<br>               221 Bolivar Street<br>               Jefferson City, MO  65101<br><br><br><br>                     Defendant. | Case No. _____<br><br>Division No. _____<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION PETITION AND DEMAND FOR JURY TRIAL**

Plaintiff Naimatullah Nyazee ("Mr. Nyazee" or "Plaintiff") on behalf of himself and all others similarly situated (the "Class" or "Class Members"), brings this action against Defendant T-Mobile USA, Inc. ("T-Mobile" or "Defendant") to obtain damages, restitution, and injunctive relief for the Class from Defendant.  Plaintiff alleges the following based on personal knowledge, the investigation of counsel, and information and belief.

**NATURE OF THE ACTION**

1.      Plaintiff and other Class Members are individuals whose personally identifiable information ("PII") -- including their names, dates of birth, Social Security numbers, driver's license information, addresses, phone numbers, and two types of identification numbers associated with mobile phones -- IMEI and IMSI numbers -- were compromised due to Defendant's failure

1

to implement and maintain reasonable safeguards to protect such information.[1]

2.     This class action seeks to redress Defendant's unlawful and negligent disclosure of over 54 million individuals' PII in a massive data breach on or around August 17, 2021 ("Data Breach" or "Breach").  On that date, and possibly on others, Defendant's inadequate security measures allowed unauthorized individuals to access and view a server Defendant used to store data that contained the PII of Plaintiff and other individuals.[2]

3.     Plaintiff and the Class Members now bear an immediate and heightened risk of all manners of identity theft.  Plaintiff has incurred, and will continue to incur damages in the form of, *inter alia*, an imminent threat of identity theft, necessary mitigation expenses, loss of privacy and the value of personal information, deprivation of the benefit of the bargain, and/or the additional damages set forth in detail below.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this matter pursuant to Mo. Const. Art. V, Sec. 14.

5.     This Court has personal jurisdiction over Defendant T-Mobile USA, Inc. because Defendant is incorporated as a foreign corporation in Missouri, purposefully directs or directed its actions toward Missouri, and has the requisite minimum contacts with Missouri to permit the Court to exercise jurisdiction under Mo. St. § 506.500.

6.     Venue is proper in St. Louis County pursuant to Mo. St. § 508.010-2(4) because this Court has personal jurisdiction over Defendant.

---

[1] *See T-Mobile Shares Updated Information Regarding Ongoing Investigation Into Cyberattack*, T-MOBILE (August 17, 2021), https://www.t-mobile.com/news/network/additional-information-regarding-2021-cyberattack-investigation.

[2] *See id.*

**PARTIES**

7.      Plaintiff Naimatullah Nyazee is a resident of Chesterfield, Missouri.  Following Defendant's public announcement of the data breach, Mr. Nyazee received notice in the form of text messages from Defendant informing him that PII, including his name and cell phone number, was stolen in a data breach and exposed to an unauthorized third party.  If Mr. Nyazee had known that Defendant would not adequately protect his PII, he would not have allowed Defendant access to this sensitive and private information.

8.      Defendant T-Mobile USA, Inc. is a Delaware Corporation with its principal place of business at 3618 Factoria Boulevard SE, Bellevue, Washington.

**FACTUAL BACKGROUND**

A.      **T-Mobile's Data Breach.**

9.      Due to inadequate security measures, between approximately July 19, 2021, and August 17, 2021, the PII of approximately 54 million individuals was exposed to unauthorized cybercriminals when they intentionally gained access to Defendant's server to access customer data.[3]

10.      By disclosing their PII to cybercriminals, Defendant put Plaintiff and all Class Members at risk of identity theft, financial fraud, and other serious harms.

11.      Defendant negligently failed to take the necessary precautions required to safeguard and protect the PII of Plaintiff and the other Class Members from unauthorized disclosure. Defendant's actions represent a flagrant disregard of Plaintiff's and the other Class Members' rights, both as to privacy and property.

---

[3] *See id.*; *Notice of Data Breach: Keeping You Safe From Cybersecurity Threats*, T-MOBILE, https://www.t-mobile.com/brand/data-breach-2021.

3

12.     Prior to Defendant's announcement of the Data Breach, the cybercriminals reported both private and public sales of the PII.[4]

**B.      Personally Identifiable Information.**

13.     PII is of great value to hackers and cyber criminals, and the data compromised in the Data Breach can be used in a variety of unlawful manners.

14.     The term "personally identifiable information" refers to information that can be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and biometric records.  This can be accomplished alone, or in combination with other personal or identifying information that is connected, or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[5]

15.     Given the nature of this breach, it is foreseeable that the compromised PII can be used by hackers and cybercriminals in a variety of different ways.

16.     A study by Javelin Strategy and Research found that individuals lost about $13 billion in 2020 as a result of identity fraud.[6]  Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the entire economy as a whole.

---

[4] Joseph Cox, *T-Mobile Investigating Claims of Massive Customer Data Breach*, VICE (Aug. 15, 2021), https://www.vice.com/en/article/akg8wg/tmobile-investigating-customer-data-breach-100-million; Chris Morris, *Hackers Claim to Breach 100 Million T-Mobile Accounts*, FORTUNE (Aug. 16, 2021), https://fortune.com/2021/08/16/tmobile-data-breach-2021-t-mobile/.

[5] *See* OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n. 1.

[6] *See Total Identify Fraud Losses Soar to $56 Billion in 2020*, BUSINESSWIRE (Mar. 23, 2021), https://www.businesswire.com/news/home/20210323005370/en/Total-Identity-Fraud-Losses-Soar-to-56-Billion-in-2020.

4

17. Indeed, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[7] Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[8] Each of these fraudulent activities is difficult to detect. An individual may not know that their Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

18. With access to an individual's PII, cyber criminals can do more than just empty a victim's bank account -- they can also commit all manner of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; or, filing a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[9]

**C.     T-Mobile Was Aware of the Risk of Cyber-Attacks.**

---

[7] *Identity Theft and Your Social Security Number*, Social Security Administration (2018) at 1, https://www.ssa.gov/pubs/EN-05-10064.pdf.

[8] *Id*. at 4.

[9] *See Warning Signs of Identity Theft*, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft.

5

19.     Data security breaches -- and data security breach litigation -- dominated the headlines in recent years, including into 2021.[10]

20.     Defendant's knowledge of the risks of identity theft is evidenced by its privacy notice:

> You trust T-Mobile to connect you to the world every day, and we're working hard to earn a place in your heart.  A big part of that is maintaining your privacy.  We believe you deserve transparency, choice, protection, and simplicity.  Our goal is to help you take action to protect your privacy.[11]

21.     The cybercriminals who obtained Class Members' PII may also exploit the PII they obtained by selling the data in the so-called "dark markets."[12]  Having obtained these names, addresses, and Social Security numbers, cybercriminals can pair the data with other available information to commit a broad range of fraud in a Class Member's name.

22.     In addition, if a Class Member's Social Security number is used to create a false identification for someone who commits a crime, the Class Member may become entangled in the criminal justice system, impairing the consumer's ability to gain employment or obtain a loan.

---

[10] *See e.g.*, Akanksha Rana, *T-Mobile Breach Hits 53 Million Customers as Probe Finds Wider Impact*, REUTERS (Aug. 20, 2021), https://www.reuters.com/technology/t-mobile-says-hackers-accessed-data-another-53-mln-subscribers-2021-08-0/; Jill McKeon, *St. Joseph's/Candler Suffers Ransomware Attack, EHR Downtime*, HEALTHITSECURITY (June 21, 2021), https://healthitsecurity.com/news/st-josephs-candler-suffers-ransomware-attack-ehr-downtime; David E. Sanger, Clifford Krauss, and Nicole Perlroth, *Cyberattack Forces a Shutdown of a Top U.S. Pipeline*, N.Y. TIMES (May 8, 2021), https://www.nytimes.com/2021/05/08/us/politics/cyberattack-colonial-pipeline.html.

[11] *T-Mobile Privacy Notice,* T-MOBILE (May 5, 2021), https://www.t-mobile.com/privacy-center/our-practices/privacy-policy.

[12] Drew Fitzgerald & Robert McMillan, *T-Mobile Hacker Who Stole Data on 50 Million Customers: 'Their Security is Awful,'* WALL STREET JOURNAL (Aug. 27, 2021), https://www.wsj.com/articles/t-mobile-hacker-who-stole-data-on-50-million-customers-their-security-is-awful-11629985105.

**D.      Class Members Have Suffered Concrete Injury as a Result of T-Mobile's Inadequate Security and the Data Breach It Allowed.**

23.      Defendant represented to customers that it provided adequate security protections for their PII, and Class Members provided Defendant with sensitive personal information, including their Social Security numbers.

24.      Plaintiff and Class Members were deprived of the benefit of the bargain they struck with Defendant.  In other words, Plaintiff and Class Members paid Defendant for mobile phone services and data security, but they did not receive the latter.

25.      The cybercriminals took public responsibility for the Data Breach and ridiculed T-Mobile's security measures as "lax."[13]  The cybercriminals exposed samples of the data and offered to sell portions of the data to the public.[14]

26.      The cybercriminals will certainly use Class Members' PII, and Class Members will be at a heightened risk of identity theft for the rest of their lives.  Plaintiff has incurred (and will continue to incur) damages in the form of, *inter alia*, loss of privacy and costs of protecting him credit, including by engaging credit monitoring and protection services.  By this action, Plaintiff seeks to hold Defendant responsible for the harm caused by its negligence.

27.      In addition, as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members have been deprived of the value of their PII, for which there is a well-established national and international market.

---

[13] *Id.*

[14] Brian Barrett, *The T-Mobile Data Breach Is One You Can't Ignore*, WIRED (Aug. 16, 2021), https://www.wired.com/story/t-mobile-hack-data-phishing/.

28.     Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the other Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.[15]   Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[16]   Javelin Strategy & Research, a leading provider of quantitative and qualitative research, notes that "[t]he theft of SSNs places consumers at a substantial risk of fraud."[17]   Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported.  There is also a high probability that criminals who now possess Class Members' PII have not yet used the information, but will do so at a later date or re-sell it.

29.     Because the Data Breach increased Plaintiff's risk of  identity theft and fraud, shortly after the Data Breach, Plaintiff  purchase out of pocket identity protection  to protect himself and to mitigate the risk caused by Defendant's negligence.

30.     The average cost per customer PII record was $180, based on a study by IBM and the Ponemon Institute.[18]   Indeed, data breaches and identity theft have a crippling effect on individuals and detrimentally impact the entire economy as a whole.

31.     As a result of the Data Breach, Plaintiff and Class Members have already suffered damages, including, but not limited to, imminent threat of identity theft, necessary mitigation

---

[15] *Data Breach Victims More Likely To Suffer Identity Fraud*, Insurance Information Institute Blog (February 23, 2012), http://www.iii.org/insuranceindustryblog/?p=267.

[16] Susan Ladika, *Study: Data Breaches Pose A Greater Risk*, CreditCards.com (July 23, 2014), http://www.creditcards.com/credit-card-news/data-breach-id-theft-risk-increase-study-1282.php.

[17] THE CONSUMER DATA INSECURITY REPORT: EXAMINING THE DATA BREACH- IDENTITY FRAUD PARADIGM IN FOUR MAJOR METROPOLITAN AREAS, http://www.nclnet.org/datainsecurity_report.

[18] *See* Abi Tyas Tunggal, *What Is The Cost of a Data Breach in 2021?*, UPGUARD (Sept. 21, 2021), https://www.upguard.com/blog/cost-of-data-breach.

8

expenses, loss of privacy and the value of personal information, and deprivation of the benefit of the bargain.

**E.    T-Mobile's Response to the Data Breach Is Inadequate to Protect Class Members.**

32.    Defendant has failed to provide adequate compensation to Class Members harmed by its negligence.  To date, Defendant has offered Class Members identity protection services through McAfee, an identity protection company, recommended that all T-Mobile customers sign up for free scam-blocking protection, and supporting customers with practical security steps.[19] Even if an affected individual accepts the credit monitoring service, it will not provide that individual any compensation for the costs and burdens associated with fraudulent activity resulting from the Data Breach that took place prior to signing up for the service.  Defendant has not offered Class Members any assistance in dealing with the IRS or state tax agencies.  Nor has Defendant offered to reimburse Class Members for any costs incurred as a result of falsely filed tax returns, a likely consequence of the Data Breach.

33.    The offered credit monitoring service is inadequate to protect Class Members from the threats they face.  It does nothing to protect <u>against</u> identity theft.  Instead, it only provides various measures to identify identity theft once it has already been committed.

**CLASS ACTION ALLEGATIONS**

---

[19] *See T-Mobile Shares Updated Information Regarding Ongoing Investigation Into Cyberattack*, T-MOBILE (Aug. 17, 2021), https://www.t-mobile.com/news/network/additional-information-regarding-2021-cyberattack-investigation.

9

34.     Pursuant to Mo. R. C. P. 52.08, Plaintiff brings this action against Defendant as a class action on behalf of himself and all members of the following class of similarly situated persons:

> All individuals residing in Missouri whose PII was compromised as a result of the T-Mobile Data Breach announced by Defendant on or about August 17, 2021.

35.     Plaintiff reserves the right to amend the above definition(s), or to propose other or additional classes, in subsequent pleadings and/or motions for class certification.

36.     Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant have or had a controlling interest, or which Defendant otherwise controls or controlled; and any legal representative, predecessor, successor, or assignee of Defendant.

37.     This action satisfies the requirements for a class action under M.R.C.P. 52.08(a), including requirements of numerosity, commonality, typicality, and adequacy of representation.

38.     This action satisfies the numerosity requirement for a class action.  Plaintiff believes that the proposed Class as described above consists of more than fifty-four million consumers across the country, of which the consumers residing in Missouri can be identified through Defendant's records, though the exact number and identities of Class Members are currently unknown.  The Class is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

39.     This action satisfies the commonality requirement for a class action.  Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members.  Common questions include, but are not limited to, the following:

> a.     Whether and to what extent Defendant had a duty to protect Class Members' PII;

b.     Whether Defendant breached its duty to protect Class Members' PII;

c.     Whether Defendant disclosed Class Members' PII;

d.     Whether Defendant's conduct was negligent;

e.     Whether Plaintiff and Class Members are entitled to damages; and

f.     Whether Defendant's disclosure intruded upon the privacy of Plaintiff and Class Members.

40.    This action satisfies the typicality requirement for a class action. The claims asserted by Plaintiff are typical of the claims of the members of the Class he seeks to represent because, among other things, Plaintiff and Class Members sustained similar injuries as a result of Defendant's uniform wrongful conduct; Defendant owed the same duty to each class member; and Class Members' legal claims arise from the same conduct by Defendant.

41.    This action satisfies the adequacy requirement for a class action. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests conflicting with the interests of Class Members. Plaintiff's Counsel are competent and experienced in data breach class action litigation.

42.    Defendant has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

43.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the thousands or millions and individual joinder is impracticable. Trial of Plaintiff's and Class Members' claims is manageable. Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

44. The prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for Defendant.

45. Defendant's wrongful actions, inactions, and omissions are generally applicable to the Class as a whole and, therefore, Plaintiff also seeks equitable remedies for the Class.

46. Defendant's systemic policies and practices also make injunctive relief for the Class appropriate.

47. Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiff and Class Members.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (Negligence)

48. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

49. Defendant owed a duty to Plaintiff and to the Class to exercise reasonable care in obtaining, securing, safeguarding, properly disposing of and protecting Plaintiff's and Class Members' sensitive information within its control from being compromised by or being accessed by unauthorized third parties. This duty included, among other things, maintaining adequate control over its computer systems and network so as to prevent unauthorized access thereof.

50. Defendant had full knowledge of the sensitivity of PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were compromised.

51. Defendant had a duty to exercise reasonable care to avoid foreseeable harm in its retention of Plaintiff's and Class Member's PII.

52. Defendant owed a duty of care to Plaintiff and members of the Class to provide

security, consistent with industry standards, to ensure that its computer systems adequately protected the sensitive information of the patients in its facilities and networks.

53.　Defendant breached its duty of care by failing to secure and safeguard the PII of Plaintiff and Class Members.　Defendant failed to use reasonable measures to protect Class Members' PII.　Defendant negligently stored and/or maintained its servers and systems.

54.　It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' PII would result in injury to Plaintiff and other Class Members. Further, the breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members were reasonably foreseeable.

55.　It was foreseeable that Defendant knew or should have known that its failure to exercise adequate care in safeguarding and protecting Plaintiff's and Class Members' PII would result in its release and disclosure to unauthorized third parties who, in turn, wrongfully used such PII or disseminated it for wrongful use.

56.　Therefore, it was foreseeable to Defendant that the failure to adequately safeguard PII would result in one or more of the following injuries to Plaintiff and Class Members: an imminent threat of identity theft, necessary mitigation expenses, loss of privacy and the value of personal information, deprivation of the benefit of the bargain, ongoing and imminent impending threat of identity theft crimes, fraud and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of confidentiality of the stolen confidential data; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; and other economic and non-economic harm.

Electronically Filed - St Louis County - October 07, 2021 - 02:24 PM

57.     But for Defendant's negligent and wrongful breach of its responsibilities and duties owed to Plaintiff and Class Members, the PII of Plaintiff and Class Members would not have been compromised.

58.     Had Defendant not failed to implement and maintain adequate security measures to protect the PII of its patients, Plaintiff's and Class Members' PII would not have been exposed to unauthorized access and they would not have suffered any harm.

59.     As a direct and proximate result of Defendant's above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of PII, Plaintiff and Class Members have incurred, and will continue to incur, the above-referenced damages, and other actual injury and harm.

60.     Defendant's wrongful actions, inactions, and omissions constituted (and continues to constitute) common law negligence.

61.     Plaintiff and the Class seek damages, injunctive relief, and other and further relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION
### (Intrusion Upon Seclusion/ Invasion of Privacy)

62.     Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

63.     The State of Missouri has long recognized the existence of the right to privacy and the rationale behind section 652B of the Second Restatement of Torts in protecting against intrusion by others into the private space and affairs of another.

64.     The Restatement (Second) of Torts states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

14

Restatement (Second) of Torts § 652B (1977).

65.     Plaintiff and Class Members maintain a privacy interest in their PII, which is private, confidential information that is protected from disclosure.  Plaintiff and Class Members had a reasonable expectation of privacy in the PII Defendant mishandled.

66.     Plaintiff's and Class Members' PII was contained, stored, and managed electronically in Defendant's phones, records, computers, and databases that was intended to be secured from unauthorized access to third-parties because it contained highly sensitive, confidential matters regarding Plaintiff's and Class Members' identities, Social Security numbers, and dates of birth.

67.     Plaintiff's and Class Members' PII, when contained in electronic form, is highly attractive to criminals who can nefariously use their PII for fraud, identity theft, and other crimes without their knowledge and consent.

68.     Defendant unlawfully intruded upon Plaintiff's solitude, seclusion, and private affairs.  Defendant's disclosure of Plaintiff's and Class Members' PII to unauthorized third parties as a result of its failure to adequately secure and safeguard their PII is offensive to a reasonable person.

69.     Defendant's disclosure of Plaintiff's and Class Members' PII to unauthorized third parties permitted the physical and electronic intrusion into Plaintiff's and Class Members' private quarters and disclosed private facts about them (including their Social Security numbers) into the public domain.

70.     In failing to protect Plaintiff's and Class Members' PII, Defendant acted with intentional malice and oppression and in conscious disregard of Plaintiff's and Class Members' rights to have such information kept confidential and private.

15

71.     Plaintiff and Class Members have been damaged by Defendant's conduct, by incurring the harms and injuries arising from the Data Breach now and in the future.  Plaintiffs, therefore, seek an award of damages on behalf of themselves and the Class.

### THIRD CAUSE OF ACTION
**(Breach of Implied Contract)**

72.     Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

73.     Plaintiff and Class Members provided PII to Defendant in connection with their obtaining mobile device services from Defendant and were required to provide their PII as a condition of receiving these services.

74.     Defendant would not have provided services to Plaintiff, nor to any members of the Class had Plaintiff and members of the Class not provided various forms of PII to Defendant, including their social security numbers, dates of birth, and other privileged and confidential items of information.

75.     Plaintiff and Class Members had no alternative and did not have any bargaining power with regards to providing their PII.  Defendant required disclosure of PII as a condition to providing services, which Plaintiff and Class Members did.

76.     When Plaintiff and Class Members paid money and provided their PII to Defendant in exchange for services, they entered into implied contracts with Defendant pursuant to which Defendant agreed to safeguard and protect such information.

77.     Defendant solicited and invited prospective clients and other consumers to provide their PII as part of its regular business practices.  These individuals accepted Defendant's offers and provided their PII to Defendant.  In entering into such implied contracts, Plaintiff and the Class

16

assumed that Defendant's data security practices and policies were reasonable and consistent with industry standards, and that Defendant would use part of the funds received from Plaintiff and the Class to pay for adequate and reasonable data security practices.

78. Plaintiff and the Class would not have provided and entrusted their PII to Defendant in the absence of the implied contract between them and Defendant to keep the information secure.

79. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

80. Defendant breached their implied contracts with Plaintiff and the Class by failing to safeguard and protect their PII.

81. As a direct and proximate result of Defendant's breaches of their implied contracts, Plaintiff and the Class sustained actual losses and damages as described herein.

82. Plaintiff and the Class seek damages, injunctive relief, and other and further relief as the Court may deem just and proper.

<u>**FOURTH CAUSE OF ACTION**</u>
**(Violation of Missouri Merchandising Practices Act)**

83. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

84. The Missouri Merchandising Practices Act ("MMPA") is intended to protect consumers like Plaintiff and Class Members from deceptive, unfair, and unconscionable acts or practices in the conduct of trade or commerce.

85. Plaintiff and Class Members have a vested interest in the privacy, security, and integrity of their personal information.

86. Plaintiff and Class Members purchased cellular and mobile devices and cellular plans from Defendant.

87. Plaintiff and Class Members used cellular and mobile devices for personal, family, and household purposes by using them to coordinate household errands, communicating with loved ones, and numerous other tasks.

88. Plaintiff and Class Members have suffered the loss of the privacy of their PII and will be forced to purchase effective protections against identity theft.

89. Defendant engaged in unlawful conduct under Mo. Rev. Stat. § 407.020 by misrepresenting the adequacy and safety of its security measures.

90. Defendants failed to disclose its inadequate security measures.

91. Defendants knowingly made false representations as to the characteristics of its security measures.

92. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer financial injury.

93. Plaintiff and Class Members bring this action under the MMPA to enjoin future violations, to recover sustained damages, and to recover costs of this action, including reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

94. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

95. Defendant benefitted from receiving Plaintiff's and Class Members' PII by its ability to retain and use that information for its own benefit.

96. Defendant understood and appreciate that Plaintiff's and Class Members' PII was private and confidential, and its value depended upon Defendant maintaining the privacy and confidentiality of that PII.

97.     Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of monies paid for services available from Defendant.

98.     Defendant had knowledge of the benefits conferred upon them by Plaintiff and Class Members.

99.     Defendant benefitted from receipt of Plaintiff and Class Members' PII, as Defendant used it to facilitate the transfer of PII between parties.

100.    Monies paid to Defendant by Plaintiff and Class Members were to be used, in part, to pay for the costs of reasonable and adequate data privacy and security measures.

101.    But for Defendant's willingness and commitment to maintain privacy and confidentiality, Plaintiff and Class Members' PII would not have been transferred to and entrusted with Defendant.

102.    As a result of Defendant's wrongful conduct, Defendant was unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

103.    Defendant's unjust enrichment resulted directly and proximately from the conduct alleged in this Petition, including retaining, compiling, and using Plaintiff and Class Members' PII.

104.    Under the principals of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, which should have been used to purchase adequate security, because Defendant failed to implement adequate security practices and procedures.

105.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds they received as a result of the conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that the Court grant relief against Defendant as follows:

A.   For an Order certifying that this action may be prosecuted as a class action pursuant to Missouri Rule of Civil Procedure 52.08 and requiring notice thereto to be paid by Defendant;

B.   Appointing Plaintiff and his counsel to represent the Class;

C.   For appropriate injunctive relief and/or declaratory relief, including an Order requiring Defendant to immediately secure and fully encrypt all confidential information, to properly secure computers containing confidential information, to cease negligently storing, handling, and securing its consumers' confidential information, and to provide identity theft monitoring for an additional five years;

D.   Adjudging and decreeing that Defendant has engaged in the conduct alleged herein;

E.   For compensatory and general damages according to proof on certain causes of action;

F.   For reimbursement, restitution, and disgorgement on certain causes of action;

G.   For both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

H.   For costs of the proceedings herein;

I.   For an Order awarding Plaintiff and the Class reasonable attorney's fees and expenses for the costs of this suit;

J.   Trial by jury; and

K.   For any and all such other and further relief that this Court may deem just and proper, including but not limited to punitive or exemplary damages.

Dated: October 7, 2021
St. Louis, Missouri

Respectfully Submitted,

**Weinhaus & Potashnick, LLP**

By: /s/ Mark Potashnick
Mo. Bar # 41315
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170

 /s/ Jeremiah Frei-Pearson
Jeremiah Frei-Pearson (*Pro Hac Vice*
forthcoming)
**Finkelstein, Blankinship,
Frei-Pearson & Garber, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel.: (914) 298-3281
jfrei-pearson@fbfglaw.com

*Attorneys for Plaintiff and the Proposed Class*